## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER CHIEW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TD BANK, N.A.,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## **CLASS ACTION COMPLAINT**

Plaintiff Alexander Chiew ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## **INTRODUCTION**

1. Plaintiff brings this action on behalf of himself and a proposed class of all similarly situated consumers against Defendant TD Bank, N.A. ("TD Bank"), arising from its unfair, deceptive, and unlawful practice of assessing cash advance fees and immediately-accruing interest ("Cash Advance Fees") on credit card purchases that are not "cash advances" as that term is used in TD Bank's Credit Card Agreement. In so doing, TD Bank deceives credit card holders and breaches its agreement with its customers.

2. TD Bank, like most major credit card issuers, charges its customers steep Cash Advance Fees when customers elect to use their credit card to receive cash from an ATM or from a bank teller. Plaintiff does not dispute TD Bank's right under its Credit Card Agreement to charge Cash Advance Fees on these bona fide cash advances. What TD Bank is not permitted to do under

1

its Credit Card Agreement is to assess Cash Advance Fees on credit card transactions that are not cash advances at all. *See* TD Bank Credit Card Agreement ("Agreement"), attached as Exhibit A.

3.  Where the Agreement authorizes the Bank to assess Cash Advance Fees on cash or certain enumerated "cash-like transactions," TD Bank may not keep secret its polices as to what it unilaterally considers to be a "cash-like transaction", and may not exercise its contractually-vested discretion in bad faith, electing to consider certain purchases to be cash advances when they are not cash advances at all. But that is exactly what it does, using that secrecy to assess Cash Advance Fees on credit card transaction types that do not share cash's essential characteristics—including that it is a totally fungible commodity that can be possessed and later used for any purpose or no purpose at all.

4.  Plaintiff's experience is illustrative. Plaintiff purchased jewelry with his credit card using the peer-to-peer money transfer mobile application Wise. Unbeknownst to Plaintiff, TD Bank unilaterally and in its sole discretion elected to treat Plaintiff's purchase of jewelry as a "cash advance," and charged Plaintiff a cash advance fee plus immediately accruing interest.

5.  TD Bank's imposition of Cash Advance Fees on this transaction, which was not for a "cash-like transaction" and was not reasonably considered an advance of cash as that term is used in the Agreement, is contrary to the Bank's contractual promises and is deceptive.

6.  It is also contrary to industry practice. Some of TD Bank's major competitors in the credit card industry such as American Express and Discover do not treat transactions like Plaintiff's as a "cash advance," as discussed herein. Other major American banks expressly inform their cardholders as to which transactions they consider cash-like transactions. TD Bank does neither.

7.  TD Bank's Credit Card Agreement never stated its true practice of categorizing non-

cash advance transactions as worthy of Cash Advance Fees. Plaintiff and other reasonable consumers could not have determined from the Bank's Credit Card Agreement that it would adopt this unexpected, unreasonable, and bad faith policy.

8. Plaintiff brings this action on behalf of himself and a proposed class of all other similarly situated TD Bank credit card holders who were improperly charged Cash Advance Fees on transactions that were not "cash-like transactions." Plaintiff seeks to end TD Bank's deceptive practices and force it to refund improper fees and interest charges. Plaintiff seeks damages, restitution, and injunctive relief, as set forth more fully below.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because TD Bank is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

11. Plaintiff is a citizen and resident of Flushing, New York. Plaintiff maintains a credit card with TD Bank.

12. Defendant TD Bank is a national bank with its headquarters and principal place of business in Cherry Hill, New Jersey. Among other things, TD Bank is engaged in the business of

3

providing retail banking services to consumers, including Plaintiff and members of the putative Class.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Credit Card Cash Advances

13. American credit card issuers generally provide a "grace period" for almost all transactions, and do not charge up-front fees for such purchases. If a cardholder pays for a purchase in full prior to the beginning of the next billing cycle, generally that cardholder will not pay any interest or fees on that purchase.

14. The exception is for cash advances. Credit card issuers generally treat cash advances differently in order to discourage the use of credit cards for cash loans. Issuers generally assess interest beginning immediately for cash advances from an ATM or a bank teller, and also assess up-front fees for using a credit card to perform such a cash advance.

15. It is therefore extremely expensive to borrow cash with a credit card. The distinction between a purchase and a cash advance is crucial and can mean a difference in interest and fees of tens or hundreds of dollars on a purchase. For example, if a $100 purchase were instead treated as a "cash advance" by TD Bank, the transaction would come with a $3 advance fee which would not be charged otherwise.

### B. TD Bank Promises to Charge Cash Advance Fees Only on Cash Advances and Disclosed "Cash Equivalents."

16. TD Bank credit card holders are subject to TD Bank's Credit Card Agreement.

17. TD Bank's Credit Card Agreement is a form contract. The contract is materially uniform across all TD Bank branded cards, and states in relevant part:

> Cash Advance and Balance Transfer Transaction Fees. 1. Cash Advance and Balance Transfer Transaction Fees.  We will charge a transaction fee on each cash advance and balance transfer you obtain in the amounts shown in the Interest Rate and Fee Schedule

4

Ex. A, p. 6.

18. TD Bank's Rates and Fees, which is also a form contract, states in relevant part:

Cash Advance Fee $10 or 5% of advance whichever amount is greater.

Ex. B, p. 1.

19. Under the Agreement, Cash Advances are described as follows:

Cash Advances obtained from a financial institution, an automated teller machine, or any other party that agrees to honor your Card or Account for cash advance purposes, and all convenience checks posted to your account are considered Cash Advances. For example, your Card may be used to obtain cash advances at ATMs displaying the VISA logo and from participating financial institutions honoring VISA credit cards. Transactions to obtain the following goods and services will also be treated as a Cash Advance: travelers checks, foreign currency, money orders, wire transfers, cryptocurrency, debt repayments, lottery tickets, casino gaming chips, race track wagers, legal online wagers, or similar betting transactions, and any other similar cash-like transactions.

Ex. A, pp. 1-2. Thus, the Bank may not assess Cash Advance Fees on other transactions.

20. Unlike other major American banks discussed below, TD Bank keeps secret major transaction types that it treats as "similar cash-like transactions" excluding them from enumeration in the Credit Card Agreement. There is, of course, no way for a cardholder to know what TD Bank considers "similar cash-like transactions" unless such supposed "cash-like transactions" are listed in the Credit Card Agreement. TD Bank does not include peer to peer transfers like Plaintiff's in its definition of Cash Advances.

21. As TD Bank is aware, payment apps like that used by Plaintiff are massively popular and commonly used components of consumers' economic activity in the U.S. TD Bank alone knows that it considers transactions using those apps to be cash advances, but keeps this policy decision secret.

22. By operation of the contract interpretation principle *expressio unius est exclusio alterius*, the exclusion of payment apps from its list of what TD Bank considers to be "cash

5

advances" or "cash-like transactions" was intentional and fairly means TD Bank does not consider such transactions to be "cash-like transactions."

23. Additionally, it was bad faith and deceptive for TD Bank to hide from cardholders its true list of transaction types it considers "cash-like transactions", especially where it alone knew or could know what it considered "cash-like" and especially where peer to peer payments are a popular transaction type for U.S. consumers.

24. Further, even if bank could keep what it considers to be a "cash-like transaction" secret from its cardholders, it would be objectively unreasonable to consider transactions like Plaintiff's to be a cash-like transaction.

25. However, as a matter of policy TD Bank does just that. TD Bank routinely charges Cash Advance Fees on transactions that are <u>not</u> "cash advances" and are <u>not</u> reasonably understood as "cash-like transactions." Indeed, the Bank assesses such fees on transactions that are not "similar" to cash and that totally lack cash's essential characteristic as a fungible method of payment.

26. The terms "cash" or "cash-like transaction" reasonably mean currency or currency equivalents that can be used for any purpose. Cash, like the travelers' checks, money orders, or foreign currency specified in TD Bank's definition of "cash-like transactions," can be independently possessed to make a later purchase or transfer—or simply to place under a proverbial mattress.[1]

---

[1] A "wire transfer" is a technical banking term meaning direct, cash transfers between two financial institutions using networks such as the Fedwire Funds Service (Fedwire) or Society for Worldwide Interbank Financial Telecommunication (SWIFT). Plaintiff did not use Wise to purchase a wire transfer.

27. But as demonstrated by Plaintiff's experience, TD Bank assesses Cash Advance Fees on transactions that are not "cash advances" or "cash-like transactions." Plaintiff never received any cash or a cash-like transaction from TD Bank that could later be used for a purchase.

28. Upon information and belief, TD Bank systematically and unreasonably treats payments made on peer-to-peer mobile applications as "cash advances," and systematically assesses Cash Advance Fees on such transactions. In so doing, TD Bank breaches its contractual promises and breaches the covenant of good faith and fair dealing.

29. TD Bank's Cash Advance Fees, when assessed on transactions that are not fairly disclosed to be "cash advances" or "cash-like transactions," are problematic junk fees because an accountholder has no reasonable way to predict or understand which transactions TD Bank will consider cash advances and which will not be unless they are enumerated in the TD Bank Credit Card Agreement.

30. Tellingly, for many years TD Bank did *not* treat payments made on peer-to-peer mobile applications as "cash advances" and did *not* charge Cash Advance Fees on such transactions. Only recently, and unbeknownst to consumers, did it change its policy.

31. At best, TD Bank's Credit Card Agreement is ambiguous as to the meaning of the terms "cash advance purposes" and "cash-like transactions." Any ambiguity in a consumer contract of adhesion should be strictly construed against the drafter, TD Bank, and in favor of the consumer.

32. A comparison of TD Bank's agreement with other credit card agreements demonstrates the ambiguity. American Express's credit card agreement is like TD Bank's in that it does not include payments made on peer-to-peer mobile applications as cash advances. Specifically, American Express's agreement states:

>A ***cash advance*** is a charge to get cash or cash-like transactions, including travelers cheques, gift cheques, foreign currency, money orders, digital currency, casino gaming chips, race track wagers, and similar offline and online betting transactions.

Unlike TD Bank, however, American Express does ***not*** treat payments made on peer-to-peer mobile applications as cash advances and does not charge Cash Advance Fees on transactions made through those applications.

33. Similarly, Discover Bank does not define payments made on peer-to-peer mobile applications as cash advances and does not charge Cash Advance fees on transactions made through those applications.

34. Conversely, other major credit issuers such as Bank of America and Chase clearly and explicitly disclose in their agreements that such transactions <u>will</u> be treated as cash advances and subject to cash advance fees.

35. For example, Bank of America's credit card agreement defines a cash advance far more broadly than TD Bank does, and clearly and explicitly discloses that it considers "person-to-person money transfers" as equivalent to a cash advance:

>Bank Cash Advance: by loans accessed in the following manner:
>    a. ATM Cash Advance: at an automated teller machine;
>    b. Over the Counter ("OTC") Cash Advance: at any financial institution (e.g., to obtain cash, money orders, wire transfers, or travelers checks);
>    c. Same-Day Online Cash Advance: by a same day online funds transfer to a deposit account;
>    d. Overdraft Protection Cash Advance: by a transfer of funds to a deposit account pursuant to an overdraft protection program (see the section titled Overdraft Protection below);
>    e. Cash Equivalents: by the purchase of foreign currency, money orders, travelers checks, wire transfers, or to obtain cash, each from a non-financial institution, or ***person-to-person money transfers***, bets, lottery tickets purchased outside the United States, casino gaming chips, cryptocurrency to the extent accepted, or bail bonds, with your card or account number (including through the use of an enabled mobile device).

36. Likewise, Chase's credit card agreement states:

> Cash-like transactions will be treated as cash advances. Cash-like transactions include, but are not limited to, the following transactions to the extent they are accepted:
> • purchasing travelers checks, foreign currency, money orders, wire transfers, cryptocurrency, other similar digital or virtual currency and other similar transactions;
> • purchasing lottery tickets, casino gaming chips, race track wagers, and similar offline and online betting transactions;
> • ***person-to-person money transfers*** and account-funding transactions that transfer currency; and
> • making a payment using a third party service including bill payment transactions not made directly with the merchant or their service provider.

37. The reason these other major American banks specify that person to person money transfers are "cash-like transactions" is because it would be unreasonable to understand that such transfers are cash-like without an express disclosure stating as much.

38. Unlike Chase and Bank of America, TD Bank never defines a "cash advance" to include transactions using person to person money transfer services.

C. **Plaintiff's Experience**

39. On March 10, 2024, Plaintiff purchased jewelry for $1,182.14 with his TD Bank credit card vis-à-vis the Wise mobile application. TD Bank deemed Plaintiff's jewelry purchase as a "cash advance" and charged Plaintiff a cash advance fee of $59.11, in addition to immediately-accruing interest.

40. Had Plaintiff known TD Bank would consider Plaintiff's payment via Wise to be a cash advance, Plaintiff would have chosen to make the payment for his jewelry a different way.

## **CLASS ALLEGATIONS**

41. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

9

42. The proposed "Class" is defined as:

All holders of a TD Bank credit card who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, were charged Cash Advance Fees on transactions other than for: convenience checks, travelers checks, foreign currency, money orders, wire transfers, cryptocurrency, debt repayments, lottery tickets, casino gaming chips, race track wagers, legal online wagers, or similar betting transactions.

43. Additionally, Plaintiff proposes a New York subclass for the foregoing class.

44. Excluded from the Class are TD Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

45. The members of the Class are so numerous that joinder is impractical. The Class consists of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, TD Bank's records.

46. The claims of the representative Plaintiff are typical of the claims of the Class he seeks to represent in that the representative Plaintiff, like all members of the Class, was charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Class, was damaged by TD Bank's misconduct in that he was assessed deceptive Cash Advance Fees. Furthermore, the factual basis of TD Bank's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And TD Bank has no unique defenses that would apply to Plaintiff and not the Class.

47. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

48. Among the questions of law and fact common to the Class include the following:

   a. Whether TD Bank breached the contract by charging charged Cash Advance Fees on transactions a reasonable person would not understand to be a loan in cash or equivalent to a cash advance based on the text of the TD Bank Credit Card Agreement

   b. Whether TD Bank violated the consumer protection laws of New Jersey and New York by charging Cash Advance Fees on transactions a reasonable person would not understand to be a loan in cash or equivalent to a cash advance based on the text of the TD Bank Credit Card Agreement.

   c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

   d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

49. Plaintiff's claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful TD Cash Advance Fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

50. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class's claim is small relative to the complexity of the litigation, and due to the financial resources of TD Bank, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and TD Bank's misconduct will proceed without remedy.

52. Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

53. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

54. TD Bank has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

55. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CAUSE OF ACTION
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

56. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

57. Plaintiff and members of the Class contracted with TD Bank for a credit card, as embodied in the TD Bank Credit Card Agreement.

58. TD Bank breached the terms of its contract with consumers when, as described herein, TD Bank charged Cash Advance Fees on transactions a reasonable person would not understand to be a loan in cash or equivalent to a cash advance based on the text of the TD Bank Credit Card Agreement.

59. Further, under the law of each of the states where TD Bank does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains TD Bank's discretion to abuse self-granted contractual powers. This good faith requirement extends to the way a party employs discretion conferred by a contract.

60. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contract.

61. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

62. TD Bank breached the implied covenant of good faith and fair dealing when it charged Cash Advance Fees on transactions a reasonable person would understand to be a loan in cash or equivalent to a cash advance. Reasonable consumers would have no reason to conclude, based on the TD Bank Credit Card Agreement's ambiguous definition of cash advance equivalents, that they would be charged Cash Advance Fees for such purchases.

63. TD Bank's breach of the implied covenant of good faith and fair dealing is particularly egregious with respect to transactions made via peer-to-peer mobile applications because, for many years, TD Bank customers who used their credit cards as the form of payment for such transactions were never charged Cash Advance Fees by TD Bank, yet TD Bank began

13

charging Cash Advance Fees on such transactions without providing notice in the TD Bank Credit Card Agreement. TD Bank's bad faith conduct starkly contrasts with the good faith conduct of competing banks that either do not charge Cash Advance Fees for transactions made via peer-to-peer mobile applications or that do charge such fees based on express contractual disclosures.

64. Each of TD Bank's actions were done in bad faith and were arbitrary and capricious.

65. Plaintiff and members of the Class have performed all the obligations imposed on them under the contract.

66. Plaintiff and members of the Class have sustained monetary damages because of TD Bank's breaches of the contract and implied covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
**Violation of New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*.**
**(On Behalf of Plaintiff and the National Class)**

67. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

68. The State of New Jersey has a significant interest in regulating the conduct of businesses operating within its borders. New Jersey, which seeks to protect the rights and interests of New Jersey and all residents and citizens of the United States against a company headquartered and doing business in New Jersey, has an interest in the Plaintiff's claims.

69. The principal place of business of TD Bank in Cherry Hill, New Jersey, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to Cash Advance Fees. TD Bank's corporate decisions regarding how to misrepresent and assess Cash Advance Fees were made from and in New Jersey.

14

70. Under choice of law principles, the common law of New Jersey applies to the nationwide common law claims of all Class members. Additionally, given New Jersey's significant interest in regulating the conduct of businesses operating within its borders, New Jersey's consumer protection statutes may be applied to non-resident consumer plaintiffs.

71. The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJ CFA" or "act"), prohibits unconscionable commercial practices, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise.

72. In the course of Defendant's business, Defendant violated the act by engaging in the unconscionable practice of charging Cash Advance Fees on transactions a reasonable person would not understand to be a loan in cash or equivalent to a cash advance based on the text of the TD Bank Credit Card Agreement.

73. Further, Defendant's acts and practices described herein offend established public policy because the harm they cause to consumers outweighs any benefit associated with such practices.

74. Defendant's actions as set forth above occurred in the conduct of trade or commerce. Defendant's unconscionable, unfair, fraudulent, and/or deceptive acts or practices were likely to and did in fact deceive reasonable consumers. No reasonable consumer would expect to be charged Cash Advance Fees on day-to-day purchases using third party apps.

75. Defendant intentionally and knowingly misrepresented and/or intentionally and knowingly omitted material facts regarding its accounts and its overdraft practices with an intent to mislead Plaintiff and the Class.

76. Defendant knew or should have known that its conduct violated the New Jersey CFA.

77. Defendant's conduct proximately caused injuries to Plaintiff and the other members of the Class. Plaintiff and the other members of the Class were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff's and the other Class members' should not have been charged Cash Advance Fees on transactions a reasonable person would not understand to be a cash advance based on the text of the TD Bank Credit Card Agreement.

78. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

79. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

80. Pursuant to N.J.S.A. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

### THIRD CLAIM FOR RELIEF
### Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349
### (On Behalf of Plaintiff and the New York Subclass)

81. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

82. N.Y. Gen. Bus. Law § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

83. TD Banks actions regarding Cash Advance Fees, as described herein, are deceptive acts or practices in the conduct of the business trade or commerce of retail banking

84. The deceptive acts or practices in the furnishing of retail banking services took place in this State.

85. N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

86. Plaintiff and the classes have been injured by TD Bank's violations of N.Y. Gen. Bus. Law § 349.

87. TD Bank's misleading and deceptive conduct occurred, and continues to occur, in the course of TD Bank's business.

88. As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages. TD Bank is liable to Plaintiff and the Class for damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring TD Bank's Cash Advance Fee policies and practices to be wrongful, unfair, and unconscionable;

2. Restitution of all Cash Advance Fees paid to TD Bank by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by TD Bank from its misconduct;

4. Actual damages in an amount according to proof;

5. Punitive and exemplary damages;

6. Pre-judgment interest at the maximum rate permitted by applicable law;

7. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: October 29, 2024

Respectfully submitted,

*/s/ Andrew J. Shamis*
Andrew J. Shamis (NY Bar No. 5195185)
Edwin E. Elliott (*pro hac vice* to be filed)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
*ashamis@shamsigentile.com*
*edwine@shamisgentile.com*

**KALIELGOLD PLLC**
Sophia Goren Gold (*pro hac vice* to be filed)
950 Gilman Street, Ste 200
Berkeley, CA 94710
Tel: (202) 350-4783
*sgold@kalielgold.com*

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (*pro hac vice* to be filed)
1100 15th Street NW 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*

*Attorneys for Plaintiff and the Putative Class*